UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| AMANDA LOUISE TRENT | Civil Action No.: 19-11777 |
| | Honorable Robert H. Cleland |
| Plaintiff | Magistrate Judge Elizabeth A. Stafford |

v.

ANDREW SAUL,
COMMISSIONER OF
SOCIAL SECURITY,[1]

       Defendant.

_____/

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 14, 15]**

Plaintiff Amanda Louise Trent appeals the final decision of defendant Commissioner of Social Security (Commissioner), which denied her application for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence and thus **RECOMMENDS** that:

---

[1] Under Federal Rule of Civil Procedure 25(d), Saul is the successor defendant.

- Trent's motion [ECF No. 14] be **DENIED**;

- the Commissioner's motion [ECF No. 15] be **GRANTED**; and

- the ALJ's decision be **AFFIRMED** under to sentence four and sentence six of 42 U.S.C. § 405(g).

## I.   BACKGROUND

### A.   Trent's Background and Disability Application

Born December 26, 1983, Trent was 31 years old on the alleged disability onset date of May 20, 2015. [ECF No. 12-2, PageID.59, 70]. She has past relevant work as a dispatcher, cashier, stocker and customer service clerk. [*Id.*, PageID.70]. Trent claimed disability due to PTSD, emotional issues, migraines, back problems, fibromyalgia, lupus and carpal tunnel syndrome. [ECF No. 12-3, PageID.117-118].

After a hearing in August 2018, during which Trent and a vocational expert (VE) testified, the ALJ found that Trent was not disabled. [ECF No. 12-2, PageID.77-115]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.*, PageID.49-52]. Trent timely filed for judicial review. [ECF No. 1].

### B.   The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

2

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§404.1520(a)(4); 416.920(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to

---

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 1520(c); 920(c).

3

the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Trent was not disabled. At the first step, he found that Trent had not engaged in substantial gainful activity during the relevant period—the alleged onset date of May 20, 2015 through the date of the decision. [ECF No. 12-2, PageID.62]. At the second step, the ALJ found that Trent had the severe impairments of degenerative disc disease of the lumbar spine, migraines, liver disease, obesity, fibromyalgia, carpal tunnel syndrome, hidradentis suppurativa, polycystic ovarian syndrome and status post right knee surgery with residual pain. [*Id.*]. He also found that Trent's PTSD was medically determinable, but non-severe. [*Id.*]. Next, the ALJ concluded that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, PageID.63-64].

Between the third and fourth steps, the ALJ found that Trent had the RFC to perform light work,[3] except:

> [She] can never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; occasionally stoop or crouch; and never

---

[3] The regulations define light work as lifting up to 20 pounds, with frequent lifting or carrying of objects weighing up to 10 pounds. Light work requires standing up to six hours of an eight-hour workday. Social Security Ruling (SSR) 83-10, 1983 WL 31251 (1983).
.

4

> kneel or crawl. [She] must avoid concentrated exposure to wetness and vibration, and is limited to an office or retail setting noise level. [She] must avoid all use of hazardous moving machinery, all exposure to unprotected heights, and no rough, uneven, slippery, shifting, or obstructed terrain.

[*Id.*, PageID.64]. At step four, the ALJ found that Trent was able to return to her past work as a dispatcher, cashier and customer service representative. [*Id.*, PageID.70]. Alternatively, after considering Trent's age, education, work experience, RFC, and the testimony of the VE for a step five analysis, the ALJ determined that there were other jobs that existed in significant numbers that Trent could also perform, including positions as an inspector, general office clerk and hand packager. [*Id.*, PageID.71]. Thus, the ALJ found Trent not disabled. [*Id.*, PageID.71-72].

## II.     ANALYSIS

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the

5

evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Trent, who is proceeding without the assistance of counsel, asserts that the ALJ erred because the combination of her disabilities makes it impossible for her to complete tasks. [ECF No. 14]. The Commissioner counters that the ALJ's conclusions are supported by substantial evidence. [ECF No. 15]. As Trent is proceeding *pro se*, the Court will limit its consideration to those matters arguably presented by her motion and a consideration of the administrative record for any obvious errors in the ALJ's conclusions. *See Brinkley v. Comm'r of Soc. Sec.*, 2015 WL 1637598, at *2-3 (E.D. Mich. Apr. 13, 2015) (when the plaintiff is *pro se*, the Court may "review[ ] the administrative record for obvious errors in order to affirm the Commissioner's conclusions ...." (internal citations and quotations omitted)).

## A.

Trent claims that she experiences migraines up to 20 days per month, some causing nausea or vomiting, and that she has stopped taking her migraine medication because it caused her to develop kidney stones. [ECF No. 16]. She also asserts that her PTSD makes it difficult to get out

of bed and causes her to cry and get agitated for no reason, and that her fibromyalgia is so painful that it hurts to shower. [*Id.*]. Trent says that she receives injections for her carpal tunnel syndrome; that it causes her fatigue, cramping, numbness and tingling; that it causes her to drop things; and that it makes it difficult for her to brush her hair and tie her shoes. [*Id.*]. Her knee and back pain make it impossible for her to stand, walk or sit for long periods of time. [*Id.*]

The ALJ agreed that Trent had severe impairments but found that "the evidence of record as a whole does not support the extent of functional limitation subjectively alleged." [ECF No. 12-2, PageID.65]. Substantial evidence supports this conclusion.

Trent suffered a back injury in a May 2015 fall. [ECF No. 12-7, PageID.324]. An x-ray showed minimal anterolisthesis of L5 on S1 and a possible pars defect. No other abnormality was seen. [ECF No. 12-8, PageID.340]. A November 2015 x-ray revealed no acute abnormality. [ECF No. 12-7, PageID.324]. A December 2015 MRI revealed diffuse disk bulge at L5-S1 with broad-based disk protrusion causing mild to moderate spinal stenosis, and mild bilateral neural foraminal narrowing. [ECF No. 12-10, PageID.520]. Trent treated with ice, heat, opioid and NSAID medications, muscle relaxants and physical therapy, but she quit physical

7

therapy after five visits due to pain. [ECF No. 12-7, PageID.310]. Trent's treating neurologist, Mohammed Al-Qasmi, M.D., noted good, symmetrical strength in her lower extremities, intact sensation and reflexes, and normal station and gait throughout his treatment records. [ECF No. 12-10, PageID.517-527].

Dr. Al-Qasmi also treated Trent's carpal tunnel syndrome, fibromyalgia and migraine headaches. [*Id.*]. He diagnosed Trent with carpal tunnel syndrome after she presented with complaints of paresthesia in both hands, primarily in the distribution along the median nerve. [Id., PageID.521]. She exhibited decreased pinprick sensation in the median distribution with a positive Tinel's sign. [*Id.*]. A normal EMG study provided no electrodiagnostic evidence of neuropathy or radiculopathy. [*Id.,* PageID.522]. Dr. Al-Qasmi administered trigger point injections in Trent's wrists in February 2016. [*Id.*, PageID.523]. No further carpal tunnel symptoms or treatments are mentioned in her subsequent records from Dr. Al-Qasmi. [*Id.,* PageID.524-527].

Dr. Al-Qasmi noted Trent's fibromyalgia diagnosis, and prescribed Cymbalta in March 2016. [ECF No. 12-10, PageID. 524-525]. He increased the Cymbalta dosage in June 2016. [*Id.*]. The Court's review of

the medical records in evidence shows no further discussion of on-going symptoms or treatment related to Trent's fibromyalgia.

Trent's headaches were also treated by Dr. Al-Qasmi. She took Fioricet for her headaches through early 2016. [ECF No. 12-8, PageID.379, 403]. In June 2016, Dr. Al-Qasmi prescribed Topomax for her migraines, and the medication provided some improvement, diminishing the frequency of headaches to only two to three times per month. [ECF No. 12-10, PageID.525]. Topomax [*Id.*, PageID.526]. Trent was transitioned to Trokendi XR (a similar, longer-acting drug) in August 2016, and advised to keep a headache diary. [*Id.*]. By March 2017, Trent's migraines were "much more tolerable." [*Id.*, PageID.527]. Dr. Al-Qasmi wrote that Trent, who was in her third trimester of pregnancy, was being treated with Tylenol and occasional Fioricet, which was cleared by her obstetrician. [Id.]. Dr. Al-Qasmi noted that resuming preventative medication would be considered after delivery, and that a headache diary should be maintained. [*Id.*, PageID.527]. Trent's reply brief suggests that she later resumed taking the Trokendi XR, but stopped after it caused her to develop a kidney stone. [ECF No. 16, PageID.607-608]. There is no evidence in the record to support this assertion and Trent is likely describing events that occurred after the ALJ's decision. As noted, the

9

Court may consider only evidence that was in the record before the ALJ when reviewing whether his decision is supported by substantial evidence. *Bass,* 499 F.3d at 513.

Trent also claims disability due to PTSD. She was diagnosed with PTSD in August 2017 but discharged from treatment in January 2018 after attending only one session with Heather Ketzler, LLMSW. [ECF No. 12-11, PageID.572]. She testified at the hearing that she placed herself on a waiting list for a therapist the day before the hearing. [ECF No. 12-2, PageID.97]. Trent refers to on-going therapy and current mental health records in her reply brief, but the record is devoid of any mental health records other than those from Ms. Ketzler. [ECF No. 16, PageID.607].

The ALJ assessed Trent's RFC after considering her treatment history, clinical records, diagnostic testing and daily activities, including caring for her children and basic household chores. [ECF No. 12-2, PageID.62-70]. The ALJ also considered the opinions of state agency experts. Alyce Metoyer, D.O, prepared an opinion about Trent's physical RFC. [ECF No. 12-3, PageID.122-125]. Dr. Metoyer found that Trent could perform work activity at a light exertional level, with no climbing of ladders, ropes or scaffolds and only occasional climbing of stairs and ramps, stooping, crouching, kneeling, and crawling. [*Id.*, PageID.123]. She

10

also proposed that Trent avoid concentrated exposure to wetness, noise, and vibration, and all exposure to hazards such as height, machinery and rough, uneven terrain. [*Id.*, PageID.123-124]. According partial weight to consulting medical opinions that Trent was capable of light work with some postural and environmental restrictions, the ALJ further restricted Trent from any kneeling or crawling. [*Id.,* PageID.69-70].

Jerry Csokasy, Ph.D, a state agency psychological consultant, found that Trent had no medically determinable mental impairments. [ECF No. 12-3, PageID.121]. The ALJ gave that opinion little weight, finding that the evidence supported that Trent had medically determinable PTSD. [ECF No. 12-2, PageID.69].

State agency consultants are considered "highly qualified . . . experts in the evaluation of the medical issues in disability claims under the Act." Social Security Ruling 96-6p, 1996 WL 374180 at *2 (July 2, 1996). And an ALJ's RFC assessment is supported by substantial evidence when it is more restrictive than the opinion evidence. *Drinkwine v. Comm'r of Soc. Sec.*, No. CV 18-12327, 2019 WL 4866144, at *3 (E.D. Mich. Aug. 8, 2019), *adopted*, 2019 WL 4626674 (E.D. Mich. Sept. 24, 2019); *Chess v. Berryhill,* 2019 WL 845986, at *7 (E.D. Tenn. Jan. 3, 2019). The ALJ here found

Trent to have greater limitations than the opinion evidence; his assessment of Trent's RFC is supported by substantial evidence.

**B.**

Trent advances several arguments for remand for the first time in her reply brief. [ECF No. 16]. Arguments raised for the first time in reply briefs are deemed waived and are not properly before the Court because the responding party has no opportunity to address them. *Sherman v. United States*, 2017 WL 3765765, at *3-4 (E.D. Mich. Aug. 7, 2017) (collecting cases). But courts recognize that *pro se* plaintiffs' submissions are to be liberally construed. *Davis v. Comm'r of Soc.Sec.*, 2018 WL 3259791, at *6 (E.D. Mich. Feb. 12, 2018). The Court will thus address the merits of Trent's reply brief arguments.

First, Trent argues that her PTSD would prevent her from returning to her past work as a police dispatcher because she would be required to field sensitive calls evoking her brother's suicide. [ECF No. 16, PageID.606]. She also argues that all her other past work required her stand, walk, bend and lift for her full shift and that she would no longer be capable of those activities. [*Id.,* PageID.606-607].

The VE testified that Trent could return to her past work as a dispatcher, cashier or customer service clerk based upon the hypothetical

provided by the ALJ. That hypothetical was identical to the RFC he derived for Trent. "It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). And when that hypothetical is identical to the RFC, the plaintiff bears the burden of showing that the hypothetical should have included additional limitations. *See Kirchner v. Colvin*, No. 12-CV-15052, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). Thus, Trent retains the burden to show that the hypothetical relied upon by the VE should have included additional limitations—a burden she has failed to meet. *Kirchner*, 2013 WL 5913972, at *11; *Jordan*, 548 F.3d at 423.

Even if the ALJ erred when finding that Trent could perform her past relevant work, that error would be harmless because substantial evidence supports the ALJ's alternative finding that he could perform the other light, unskilled jobs identified by the VE. Trent does not argue that this alternative finding was not supported by substantial evidence. Remand is not warranted.

## C.

Trent argues that the ALJ erred by not ordering that she be examined by a consulting specialist. But "the regulations do not require an ALJ to refer a claimant to a consultative specialist, …[they] simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a full determination." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).

Here, the ALJ ensured that the record was sufficient for him to make his decision. He did so because the Sixth Circuit has held that an ALJ has a special, heightened duty to develop the record when the plaintiff is (1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures. *See Nabours v. Comm'r of Soc.Sec.*, 50 F. App'x 272, 275 (6th Cir. 2002); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir.1986). The record does not show that Trent was incapable of effectively presenting her case and, even if the ALJ's duty to develop the record was triggered, he fulfilled that duty.

Trent waived her right to counsel at the hearing after the ALJ informed her of the implications of waiver. [ECF No. 12-2, PageID.81, 85]. She is a high school graduate who has completed some college course work, and she did "an excellent job" of providing information about

14

additional medical records not in the record. [*Id.*, PageID.84-85, 87-88]. The ALJ agreed during the August 7, 2018 hearing that he would further develop the record post-hearing by obtaining the records identified by Trent. [*Id.*, PageID.84-85].

As promised, the ALJ obtained records through August 30, 2018, after the hearing. [*See* ECF No. 12-2, PageID.68-69; ECF No. 12-11, PageID.557-581]. Courts have held that an ALJ satisfies his "'duty to develop the record by obtaining pertinent, available medical records which c[a]me to his attention during the course of the hearing.'" *Figard v. Comm'r of Soc. Sec.,* 2010 WL 3891211, at *7 (W.D. Mich. July 1, 2010) (quoting *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996)); *see also Morgan v. Astrue*, 2010 WL 3723992 at * 8 (E.D.Tenn. June 30, 2010), *adopted*, 2010 WL 3723985 (E.D.Tenn. Sept.15, 2010) (even under the heightened duty standard, the Sixth Circuit "did not intend to impose a duty on ALJs to serve as a pro se claimant's investigator, researcher, records custodian, or advocate *outside of the courtroom*.") (emphasis in original). The ALJ here fulfilled his duty to develop the record.

Even though Trent was unrepresented, the ALJ had no duty to send her for a consultative examination. *See Gilbert v. Comm'r of Soc.Sec.*, 2019 WL 117468, at *7 (S.D. Ohio Jan. 7, 2019); *Robinson v. Comm'r of*

15

*Soc.Sec.*, 2013 WL 633709, at *13 (N.D. Ohio Jan. 25, 2013).  Agency regulations explain that a consultative examination is required only "when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim . . . ." 20 C.F.R. § 416.919a(b).  If the record contains substantial medical and other evidence to support a finding on disability, an ALJ is not required to order a consulting examination. *Beavers v. Comm'r of Soc.Sec.*, 2019 WL 3519695, at *6 (E.D. Mich. June 19, 2019).

Trent's record contains treatment records from 2015 to 2018, including treatment notes and test results from her primary care provider, her neurologist, who she saw as frequently as once a month, her gynecologist, her dermatologist and a therapist, as well as records from hospital visits.  [ECF No. 12-7; ECF No. 12-10].  Although there is no opinion evidence from Trent's treating physicians, her records were evaluated by state agency medical and psychological experts.  [ECF No. 12-2, PageID.69].  The Court is satisfied that the ALJ could reasonably conclude that the record evidence was sufficient to make the disability determination without a consultative examination.  *See Beavers*, 2019 WL 3519695, at *6.

## D.

Finally, Trent alludes to recent medical treatment in her reply brief, but records of this treatment were not before the ALJ at the time of his decision and thus cannot be considered for purposes of the substantial evidence review. *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir 2001). If these additional records had been submitted to the Court, it might have construed their submission as a request for remand to consider new evidence under sentence six of 42 U.S.C. §405(g). But Trent did not provide any additional medical records for the Court to consider. And if the referenced but unincluded records relate to Trent's condition after the administrative decision, they would not be material and would not warrant remand. *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988) (Evidence reflecting an applicant's aggravated or deteriorated condition is not material because it is intrinsically irrelevant to whether she was disabled between the alleged date of disability and the date of the decision.); *see also Casey*, 987 F.2d at 1233. If a plaintiff believes she can establish disability after the date of the decision, her remedy is to apply for benefits for the later period. *See Sizemore,* 865 F.2d at 712.

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Trent's motion [ECF No. 14] be **DENIED**; that the Commissioner's motion [ECF No. 15] be **GRANTED**; and that the ALJ's decision be **AFFIRMED.**

s/Elizabeth A. Stafford<br>ELIZABETH A. STAFFORD<br>United States Magistrate Judge

Dated: May 26, 2020

### NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*.* And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the

same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 26, 2020.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
